## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDALE CUMMINGS<br>614 Monmouth Street<br>Trenton, NJ 08609 | :<br>:<br>:   CIVIL ACTION<br>: |
| Plaintiff, | :   No. _____<br>: |
| v. | :<br>:   **JURY TRIAL DEMANDED** |
| SUMMIT SECURITY SERVICES, INC.<br>2401 Morris Avenue<br>Union, NJ 07083 | :<br>:<br>: |
| Defendant. | : |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.  This action has been initiated by Randale Cummings (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Summit Security Services, Inc. (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of 42 U.S.C. § 1981 and the New Jersey Law against Discrimination ("NJ LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There is supplemental jurisdiction over state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims.

3.     This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey. Additionally, all actions underlying the claims in the instant case occurred in this venue.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual residing at the above-captioned address.

7.     Summit Security Services, Inc. ("Defendant") is a national security services company providing security personnel and services to third-party businesses throughout the United States.

8.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

9.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is a 56-year-old, black, African-American male.

2

11.   Plaintiff was hired by Defendant in or about May of 2012, and he was employed with Defendant in total for approximately 3 years and 8 months (until being terminated, as discussed *infra*).

12.   Plaintiff was initially employed by Defendant as an Event Security Officer, then as a Site Floater, and he was ultimately promoted to the position of Site Supervisor in 2015.

13.   At the time of Plaintiff's termination from employment, he was employed as a Site Supervisor at a site for one of Defendant's clients, Associated Press. The location wherein Plaintiff was a Site Supervisor for Associated Press was at 19 Commerce Drive, Cranbury, New Jersey.

14.   By way of management overseeing Plaintiff: (a) the facilities manager of Associated Press whom Plaintiff interacted with occasionally was one Thomas Leone (albeit he gave directives or information at times but was not a direct manager of Plaintiff); and (b) Cindy Nieto was a direct employee of Defendant who was a manager at the Cranbury location and the individual who directly supervised Plaintiff (on-site).

15.   In addition to Plaintiff, Nieto - a Caucasian female - supervised all of Defendant's security officers at the Cranbury location performing work for Associated Press.

16.   While overlapping Nieto in 2015, Plaintiff observed, experienced and determined that Nieto was blatantly discriminatory towards black employees of Defendant. Specifically:

A.   Although Plaintiff himself is black, Plaintiff was directed by Nieto to more carefully watch black employees, specifically being told to keep an eye on the black ones;

B.   Nieto talked to the black employees in a condescending and demeaning manner; and

C.   Nieto was noticeably treating black employees disparately with respect to discipline, policy enforcement, and job duties (in that discipline and policies were being enforced much harsher towards black employees).

17.     As a result of clear racism by Nieto, Plaintiff specifically lodged complaints of racially discriminatory practices with multiple managers of Defendant, including but not limited to Vincent Zvolensky (Regional Manager of Defendant), Nate Cooper (Manager), and Sabrina Leverett (Account Manager). The complaints were made by Plaintiff initially in or about late November of 2015. Plaintiff had initiated these referenced complaints by sending an e-mail to Leverett stating he was "requesting a meeting" . . . "to discuss an ongoing problem with Site Manager Ms. Neito she has taken upon herself to violate summit policies on a daily basis when it comes to people of color."

18.     By January of 2016, Defendant's management had taken no meaningful action to remedy any of Plaintiff's aforesaid complaints or concerns despite his renewed concerns in this timeframe, and Nieto was conducting herself in the same manner as prior to Plaintiff's complaints of discrimination.

19.     On or about January 14, 2016, Plaintiff escalated his numerous prior complaints to management of Defendant's client, Associated Press, particularly one Danny Spriggs (a Vice President of Associated Press).

20.     Days after Plaintiff's the then most recent complaint to Spriggs, on or about January 19, 2016, Plaintiff was directed to no longer report to work by Zvolensky, and when Plaintiff inquired as to his employment status, he was only told by Zvolensky Defendant and Associated Press desire to make changes. Plaintiff was also affirmatively told he was not longer going to be employed as a Site Supervisor for Defendant.

21.     Prior to making complaints of racial discrimination about and concerning Nieto, Plaintiff had been recognized as performing his prior jobs very well, and he had been recently promoted.

22.     Following his removal from his position as Site Supervisor in January of 2016, Defendant refused to reinstate Plaintiff to the same or similar position despite requests by Plaintiff.

**Count I**
**Violations of 42 U.S.C. § 1981**
**(Retaliation)**

23.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

24.     Plaintiff was removed from his position of Site Supervisor, terminated and/or not reinstated as explained *supra* because of complaints of racial discrimination.

25.     These actions as aforesaid constitute unlawful retaliation in violation of 42 U.S.C. § 1981.

**Count II**
**Violations of the New Jersey Law Against Discrimination**
**(Retaliation)**

26.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

27.     Plaintiff was removed from his position of Site Supervisor, terminated and/or not reinstated as explained *supra* because of complaints of racial discrimination.

28.     These actions as aforesaid constitute unlawful retaliation in violation of 42 U.S.C. § 1981.

**Count III**
**Violations of the Conscientious Employee Protection Act ("CEPA")**
**(Retaliation)**

29.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. In addition to raising complaints of racial discrimination, Plaintiff also raised concerns of fraud wherein Defendant was unlawfully billing the client, Associated Press, for work not being performed or through exaggeration.

31. Plaintiff's complaints of fraud and unlawful billing were raised in conjunction with his complaints of racially discriminatory practices.

32. Plaintiff was terminated in very close temporal proximity to his complaints and for totally pretextual reasons.

33. Plaintiff's removal from his position of Site Supervisor, termination and/or non-reinstatement as explained *supra* because of complaints of illegalities and fraud constitute violations of CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    _____

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 13, 2016

7